**DAYTON METROPOLITAN HOUSING AUTHORITY, Appellee,**

**v.**

**DAYTON HUMAN RELATIONS COUNCIL, et al., Appellants.**

[Cite as *Dayton Metro. Hous. Auth. v. Dayton Human Relations Council* (1992), 81 Ohio App.3d 436.]

Court of Appeals of Ohio,
Montgomery County.

No. 13106.

Decided June 19, 1992.

*Peter K. Newman* and *Teresa D. Jones,* for appellee.

*Dwight A. Washington,* for appellants.

FAIN, Presiding Judge.

Defendants-appellants, Dayton Human Relations Council ("HRC") and Jerald L. Steed, Executive Director of HRC, appeal from the trial court's decision granting to the plaintiff-appellee, Dayton Metropolitan Housing Authority ("DMHA"), a permanent injunction against HRC. HRC was prohibited from proceeding with a hearing on charges of discriminatory practices against DMHA made by a DMHA employee, Howard Adams, to HRC.

HRC contends that the trial court erred by exercising jurisdiction in the action because: (1) DMHA failed to join all parties who had an interest in the matter as required by R.C. 2721.12 in declaratory judgment actions; (2) the substance of administrative agencies' conciliation and settlement agreements is beyond judicial review; and (3) DMHA failed to prove that irreparable injury would result and that no other adequate remedy at law existed. HRC further contends that the trial court erred when it reopened the record, *sua sponte,* to receive additional evidence that was not proffered by either party.

We conclude that the trial court did not err when it exercised jurisdiction in the action because HRC and DMHA were the only parties directly involved in and affected by the instant action; that the trial court did not inquire into the substance and appropriateness of the settlement agreement; and that HRC itself lacked jurisdiction to proceed in Adams' case. The trial court did not abuse its discretion or commit prejudicial error when it reopened the record to receive additional evidence.

Accordingly, the judgment of the trial court is affirmed.

## I

HRC was created pursuant to the Dayton Revised Code of General Ordinances ("R.C.G.O.") as an administrative agency empowered to address unlawful discriminatory practice within the city of Dayton. HRC is charged with the duty of investigating and eliminating unlawful discriminatory practices.

In August 1990, Derrick Moore and Howard Adams filed unlawful discrimination charges with HRC against their employer, DMHA, alleging race, age and sex discrimination collectively. Conciliation efforts were ongoing between DMHA and HRC.

On July 11, 1991, Steed proposed a settlement offer to DMHA. DMHA responded to the offer by letter stating that it was considering the offer and needed additional time in order to review the results of a study regarding the job evaluation and compensation analysis of each position within DMHA. On July 22, 1991, HRC determined that probable cause existed and a formal complaint was issued against DMHA. The matter was scheduled for public hearing on September 9, 1991, pursuant to R.C.G.O. 32.20(C).

DMHA accepted HRC's settlement offer of July 11, 1991, regarding the charges by Adams on August 20, 1991. HRC disputes this. DMHA rejected HRC's offer regarding the charges by Moore and proposed a counteroffer. HRC responded that it would consider DMHA's counterproposal at the next HRC board meeting on September 16, 1991.

DMHA then requested that HRC continue the September 9 hearing until after the board meeting or that HRC approve DMHA's acceptance of the settlement offer and counteroffer prior to hearing. HRC refused to cancel the hearing. DMHA filed a motion with the HRC hearing examiner requesting to continue the hearing due to the settlement offer and acceptance. The examiner refused to postpone the hearing.

On September 6, 1991, DMHA filed complaint for declaratory judgment pursuant to R.C. 2721.01 and Civ.R. 57. DMHA moved for a temporary restraining order on September 9 to enjoin HRC from proceeding with the scheduled hearing. HRC claims it did not receive notice of this motion. DMHA asked the trial court to determine whether a settlement was reached between DMHA and HRC and to declare that HRC had no authority to proceed with the cases. A temporary restraining order was issued by the trial court to remain in effect until the HRC board processed the settlement offer.

Thereafter, HRC rejected the settlement acceptance and counteroffer of DMHA in both Adams' and Moore's cases. HRC moved to vacate the temporary restraining order. Following a hearing on HRC's motion, the trial

court denied the motion to vacate the prior temporary order. The trial court instructed the parties to proceed with a presentation of the matter at the board meeting on September 16. During the public meeting, the board refused to hear the presentation from DMHA.

On September 18, 1991, the temporary restraining order expired. The hearings were rescheduled for October 6, 1991. On September 25, HRC notified DMHA that the *Adams* hearing would begin the following morning. In response, DMHA moved for a temporary restraining order and preliminary injunction enjoining HRC from proceeding with the hearings pursuant to Civ.R. 65(B). DMHA argued that HRC did not have jurisdiction to proceed with the hearing because DMHA had accepted HRC's settlement offer.

Following the October 3 hearing on DMHA's motion, the trial court notified the parties that it wanted to receive additional evidence. The trial court reopened the record and received additional evidence.

The trial court's final decision and order found that HRC did not have jurisdiction to proceed with the Adams hearing because a settlement agreement had been reached. The trial court found that HRC had jurisdiction to proceed with the Moore hearing. From the decision and order of the trial court granting a permanent injunction against HRC regarding Adams' charges, HRC appeals.

## II

HRC's first assignment of error is as follows:

"The trial court erred by exercising jurisdiction when appellee/plaintiff failed to comply with Ohio Revised Code § 2721.12."

■ HRC contends that because Moore and Adams are the actual parties who alleged discriminatory employment practices against DMHA, they were indispensable and interested parties in the action. As such, DMHA was required to join Adams and Moore in the action pursuant to R.C. 2721.12, and failure to do so precluded the trial court from exercising jurisdiction in the action. HRC claims that the injunctive relief granted by the trial court affected the legal right of Adams to have his complaint processed by HRC.

R.C. 2721.12 provides as follows:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration. No declaration shall prejudice the rights of persons not parties to the proceeding. * * *"

DMHA sought declaratory relief in its complaint against HRC. DMHA asked the trial court to declare that HRC did not have the authority to hear

Moore's and Adams' cases scheduled for September 9, 1991, because settlement offers were processed. DMHA moved for a permanent injunction enjoining HRC from proceeding with public hearings on Adams' and Moore's discrimination claims.

The trial court's final decision and order issued a permanent injunction against HRC prohibiting HRC from proceeding with Adams' claim because a settlement agreement had been reached. HRC was not enjoined from proceeding with the hearing regarding Moore's claim. Injunctive relief was sought by DMHA and granted by the trial court. HRC appealed from the injunctive order. Therefore, R.C. 2721.12, providing that all persons with a claim or interest in an action for declaratory relief must be made parties, is not controlling in this instance.

Moreover, Adams was not a direct party in interest nor was he an indispensable party. The action concerned an issue in dispute between HRC and DMHA regarding HRC's authority to proceed in the case. Adams' claim of discrimination related only indirectly to the issue in dispute between HRC and DMHA. Adams' claim was not directly affected by the action. Therefore, we conclude that the trial court was not precluded from exercising jurisdiction because DMHA allegedly failed to join all interested parties as HRC claims.

HRC's first assignment of error is overruled.

### III

HRC's second assignment of error is as follows:

"The trial court erred by exercising jurisdiction when the subject matter of the complaint and the sole basis for the injunctive relief involved conciliation and settlement efforts."

HRC asserts that the trial court erred by exercising jurisdiction because the allegations in the pleadings and the evidence in support of the injunction required the trial court to inquire into the conciliation attempts made by the parties, and such inquiry is beyond judicial review. DMHA contends that the trial court did not make a determination as to whether the settlement terms or amount were appropriate or whether DMHA participated in unlawful discrimination practices, and, therefore, the trial court properly exercised jurisdiction.

The trial court found that a settlement agreement regarding Adams' charges had been accepted by DMHA. The record before us contains evidence indicating that the trial court could reasonably have found that settlement negotiations were ongoing between the parties subsequent to HRC's having filed a complaint and that a proposal by HRC as to the Adams matter

had been accepted by DMHA. The trial court simply determined the factual issue, to which HRC's jurisdiction to hold a hearing was subject, of whether a settlement agreement had been reached between the parties. The trial court neither reviewed the appropriateness of the settlement agreement nor did it make a finding as to whether DMHA had participated in unlawful discrimination practices. Therefore, we conclude that the trial court did not err when it exercised jurisdiction in the case before us.

HRC's second assignment of error is overruled.

## IV

HRC's third assignment of error is as follows:

"The trial court erred in exercising jurisdiction and enjoining the administrative process when an adequate remedy at law exists and no proof of irreparable injury was offered."

HRC asserts that the alleged jurisdictional defects raised by DMHA cannot be the basis for enjoining HRC because HRC did not patently and unambiguously lack jurisdiction and because an adequate remedy at law exists pursuant to R.C. Chapter 2506. DMHA contends that an administrative agency can be enjoined from further proceedings if a jurisdictional defect exists. HRC claims that the record is devoid of evidence showing that HRC patently and unambiguously lacked jurisdiction.

█ In order to obtain an injunction, the moving party must show by clear and convincing evidence that immediate and irreparable injury, loss or damage will result to the applicant and that no adequate remedy at law exists. *Zavakos v. Zavakos Ent., Inc.* (1989), 63 Ohio App.3d 100, 577 N.E.2d 1170. It is within the trial court's discretion to make a reasonable determination whether an adequate remedy at law is available or whether irreparable injury will result to the party seeking an injunction if no injunction is issued.

█ A writ of prohibition may be granted if a judicial or quasi-judicial tribunal patently and unambiguously lacks jurisdiction, despite a relator's having an adequate remedy at law. However, if the trial court's lack of jurisdiction is not patent and unambiguous, a writ will not lie; the party asserting the trial court's lack of jurisdiction must first argue that issue in the trial court, and then, if it loses on that issue, assign that as error in any subsequent appeal.

█ In order to determine whether to grant a writ of prohibition to prevent a judicial or quasi-judicial tribunal from proceeding in an administrative action, a two-step test is applied. *State ex rel. East Mfg. Corp. v. Ohio Civ. Rights Comm.* (1992), 63 Ohio St.3d 179, 180, 586 N.E.2d 105, citing *State ex*

*rel. Natalina Food Co. v. Ohio Civ. Rights Comm.* (1990), 55 Ohio St.3d 98, 562 N.E.2d 1383. By analogy, the same two-step test should be applied in determining whether a trial court should enjoin an administrative agency from exercising purported quasi-judicial jurisdiction. First, it must be determined whether the agency patently and unambiguously lacks jurisdiction to proceed. If it is determined that the agency patently and unambiguously lacks jurisdiction, it is not necessary to consider further whether the relator has an adequate remedy at law. *State ex rel. East Mfg. Corp., supra.* If it is determined that an agency's jurisdiction is unclear, then it must be determined whether the relator has an available, adequate remedy at law. *Id.*

■ Conciliation efforts, undertaken in good faith, must be completed and unsuccessful in eliminating alleged discriminatory practices, as a jurisdictional prerequisite to the issuance of a complaint by the Ohio Civil Rights Commission pursuant to R.C. 4112.05(B). *Harbor Park Marinas v. Ohio Civ. Rights Comm.* (1978), 64 Ohio App.2d 120, 18 O.O.3d 93, 411 N.E.2d 811, paragraph two of syllabus, citing *State ex rel. Republic Steel Corp. v. Ohio Civ. Rights Comm.* (1975), 44 Ohio St.2d 178, 339 N.E.2d 658. Alternatively, if conciliation efforts are completed and successful, a jurisdictional prerequisite to the issuance of a complaint and hearing is not present.

■ In *Republic Steel Corp.,* the Ohio Civil Rights Commission expressly acknowledged a failure to comply with the jurisdictional prerequisite that the commission must attempt conciliation before it may issue a complaint. Therefore, the commission patently and unambiguously lacked jurisdiction. The Supreme Court noted that because the commission unambiguously lacked jurisdiction to proceed, whether the availability of an appeal from the commission's findings constituted an adequate remedy at law was immaterial. *State ex rel. Republic Steel Corp., supra,* at 185, 339 N.E.2d at 663.

The Ohio Supreme Court concluded in *East Mfg. Corp.* that the Ohio Civil Rights Commission had complied with the conciliation prerequisite prior to issuing a complaint, and, therefore, that the commission did not patently and unambiguously lack jurisdiction. The court then determined that East Mfg. had an adequate remedy at law. Accordingly, the Supreme Court denied the request for a writ of prohibition seeking to order the commission to dismiss the discrimination complaint it had filed against East Mfg.

HRC's function under the Dayton ordinances is similar to that of the Ohio Civil Rights Commission. Both are administrative agencies with authority to investigate charges of discrimination and to issue complaints, with the purpose of eliminating discriminatory practices. Both parties to this appeal cite cases involving the Ohio Civil Rights Commission for propositions of law analogous to the case before us.

By analogy, HRC is divested of the power to file a complaint or to hold a hearing after a settlement agreement is reached. R.C.G.O. 32.20(C). The ordinance does not explicitly prohibit the parties from settling the matter in dispute subsequent to a complaint being filed. The evidence indicates that the chairperson of HRC sent a letter to DMHA's executive director explaining that if the conciliation efforts were successful in achieving an agreement satisfactory to all parties, the charges would be dismissed. In the letter, it was recited that if the conciliation efforts should fail, then the HRC would proceed to a public hearing.

The trial court did not abuse its discretion in finding that HRC patently and unambiguously lacked jurisdiction to hold a hearing after the matter had been settled to its satisfaction. As noted in Part III of this opinion, the trial court found from the evidence presented that a settlement agreement between DMHA and HRC had been reached. The record contains a letter from HRC to DMHA proposing a settlement offer to DMHA. DMHA responded that it would consider the offer and stated that it needed additional time to review the results of a study regarding the job evaluation and compensation analysis of each position within DMHA. HRC then determined that probable cause existed, and filed a complaint. Subsequently, DMHA accepted by letter HRC's prior offer of settlement in regards to the charges of Adams. HRC had not at any prior time revoked this offer. DMHA rejected the settlement offer as to Moore, and made a counteroffer. HRC responded that it would consider DMHA's counteroffer at the next HRC board meeting.

Because the record contains a letter from DMHA accepting HRC's settlement proposal, the trial court could reasonably have found from the evidence presented that HRC patently and unambiguously lacked jurisdiction. Therefore, relying upon the case of *State ex rel. East Mfg. Corp.*, we determine that it is not necessary to consider further whether DMHA has an adequate remedy at law. We conclude that the trial court did not abuse its discretion when it exercised jurisdiction to proceed.

HRC's third assignment of error is overruled.

## V

HRC's fourth assignment of error is as follows:

"The trial court erred by reopening the record, *sua sponte*, to receive evidence not proffered by either party."

HRC claims that the trial court erred when it reopened the record and received additional evidence following the initial hearing on the motion for a permanent injunction by DMHA.

We note that the additional evidence received by the trial court only concerned the salary information of Moore. This new evidence did not relate to Adams. The trial court held that because DMHA had not accepted HRC's settlement offer as to Moore, HRC could proceed with a hearing in his case. The evidence received by the trial court does not affect Adams' claim, the subject of this appeal. Furthermore, it is within the trial court's discretion to determine whether to receive additional evidence in a matter, and we cannot conclude that the trial court abused its discretion when it reopened the record in the case before us.

HRC's fourth assignment of error is overruled.

### VI

All of HRC's assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and WOLFF, JJ., concur.